EVANGELO ARVANETES
Assistant Federal Defender
Federal Defenders of Montana
Office Headquarters, Great Falls
104 2nd Street South, Suite 301
Great Falls, Montana 59401-3645
vann_arvanetes@fd.org
Phone: (406) 727-5328
Fax: (406) 727-4329
    Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>DEBORAH JOY DURAND,<br><br>    Defendant. | CR 16-43-GF-BMM<br><br>**BRIEF IN SUPPORT OF MOTION IN LIMINE REGARDING EXPECTED GOVERNMENT EVIDENCE** |

## I.  INTRODUCTION

Defendant Deborah Joy Durand (Ms. Durand), by and through her counsel of record, Evangelo Arvanetes and the Federal Defenders of Montana, has moved the Court in limine pursuant to Rule 104(a) of the Federal Rules of Evidence for advance rulings on the scope of proof at the upcoming bench trial now scheduled for August 21, 2017.  (Doc. 53).

1

## II.  BACKGROUND

The following facts are summarized from the discovery in this case.

Ms. Durand was employed as a rural letter carrier for the United States Postal Service (USPS) in Tomball, Texas.  In conducting her duties as a letter carrier, Ms. Durand suffered injuries to her lower back, shoulder, and arm.  She sought medical attention due to the pain she was experiencing in her lower back, shoulder, and arm.  Her USPS employer assisted her in submitting a claim under the Federal Employee Compensation Act (FECA) workers' compensation benefits.

All workers' compensation benefits payable to federal employees for injuries sustained during the performance of their duties are determined by and paid through a division of the Department of Labor (DOL) called the Office of Workers' Compensation Programs (OWCP).  The entitling legislation is FECA.

The FECA program is financed by the Employees' Compensation Fund, which consists of monies appropriated by Congress or contributed to by certain agencies from operating revenues.  The USPS, however, must fund its own budget so it has a police force to help control the amount of workers' compensation benefits provided to employees.  This police force is called the USPS Office of Inspector General or USPS OIG, and this police force may perform selected audit activities in coordination with the independent OIG.

The USPS OIG established a ruse kayak trip, costing the government $15,000(!) – and perhaps upward to $30,000 – (when including the agents prep-work, time on the kayak trip, the kayak trip itself, gas and flight costs of agents and Ms. Durand, and kayak trip postmortem including the fake surreptitious post-kayak trip interview – itemization to the best of the Government's ability *as to some parts* has been estimated at $15,000), wherein the government told Ms. Durand she won a kayaking trip. She went on this trip, was video recorded without her knowledge of the true purpose, and then was interviewed by a USPS OIG agent posing as a Department of Labor (DOL) employee thereafter (without her knowledge or its underlying purpose).

### III. CONTENTIONS REGARDING EXPECTED EVIDENCE AT TRIAL

Although we cannot know for sure, we presume the government intends to play the entire video recording of Ms. Durand's interview by the fake DOL employee following the ruse kayak trip (hereinafter referred to as the "ruse kayak video") she attended.

During the interview, Ms. Durand was asked various questions which she answered to the best of her ability. The government has superimposed in this fake-interview video another video of Ms. Durand during the ruse kayak trip, (all edited) such that when Ms. Durand answered the questions asked of her to the best of her

3

ability, another smaller video (of the ruse kayak trip) plays in the upper right-hand corner of the fake-interview video seemingly used to contradict what Ms. Durand is saying in the interview video. The government's *edited* video is what is known as a "picture-in-picture" or "PIP" video and is also the subject of this motion in limine.

Ms. Durand contends that, individually, neither the interview video, the ruse kayak video, nor the PIP video, meets admissibility standards as the following argument details and therefore should be excluded at trial.

In the event this Court finds otherwise, in the alternative, Ms. Durand contends that the fake-interview video and the ruse kayak videos must be played individually and *in tota fina erga omnes et omnia* – but especially, for the following reasons, the edited PIP video should be excluded.

### A. This Court should exclude the evidence the government plans to introduce at trial because this evidence is irrelevant.

Federal Rule of Evidence 401 defines "relevant evidence" as that which has "any tendency to make a fact more or less probable than it would be without the evidence." Rule 402 provides that relevant evidence is admissible, except as limited by the Constitution, statutes, or other rules of evidence. Evidence which is not relevant is not admissible. Fed. R. Evid. 402.

"Whether a proposition is of consequence to the determination of the action is

4

a question that is governed by the substantive law." *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981); *United States v. Click*, 807 F.2d 847, 850 (9th Cir. 1987).

Evidence of Ms. Durand taking a ruse kayak trip and questions about the same during the post-kayak trip interview do not make the ultimate determination of whether Ms. Durand committed the crimes of false statements, wire fraud, false claims, or theft more probable or less probable. That is true because, as charged, those crimes center on Ms. Durand having obtained a work-related injury; having submitted a claim to OWCP for her injuries; having been advised of her work restrictions and disability status; and having received (and still does receive) benefits from OWCP. (See Doc. 2).

How Ms. Durand chose to recreate–even under the government's ruse–matters not to these undisputed facts.

> **B. This Court should exclude evidence concerning Ms. Durand's interview video, ruse kayak, and/or PIP video because such evidence is inadmissible character evidence and does not satisfy the Ninth Circuit's four-part test for admissibility.**

Rule 404 of the Federal Rules of Evidence, provides, in pertinent part:

(b) Crimes, Wrongs, or Other Acts.

> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the

5

character.

"Other acts" evidence is not admissible if it is being used to establish the defendant's propensity to commit the charged offense. *United States v. Warren*, 25 F.3d 890, 895 (9th Cir. 1994) (evidence of separate stabbing was so inextricably intertwined with stabbing for which defendant was being prosecuted that it was admissible).

The Ninth Circuit does not look upon other acts evidence with favor. "Our reluctance to sanction the use of evidence of other crimes stems from the underlying premise of our criminal justice system, that the defendant must be tried for what he did, not for who he is." *United States v. Hodges*, 770 F.2d 1475, 1479 (9th Cir. 1979).

The asserted evidence must satisfy a four-part test to be admissible. The prior acts must: (1) tend to prove a material point; (2) be sufficient to support a finding that the defendant committed the acts; (3) be similar to the offense charged, when the evidence is being introduced to show intent or knowledge; and (4) not be too remote in time. *United States v. Smith*, 282 F.3d 758, 768 (9th Cir. 2002).

With respect to the relevance requirement, the government must articulate "precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence.'" *United States v. Mayans*, 17 F.3d 1174, 1181 (9th Cir. 1994) (citation omitted). The expected evidence does not satisfy every element of the

four-part test of admissibility.

> **C. If this Court rules that the interview video, the ruse kayak video, and/or the PIP video evidence is admissible, the evidence should still be excluded because the probative value of such evidence is substantially outweighed by the danger of unfair prejudice that will be caused by admission of the evidence.**

After considering all the above factors concerning the admissibility of prior bad acts evidence, the district court must next weigh the probative force of the evidence against its prejudicial effect. *Unite States v. Spillone*, 879 F.2d 514, 520 (9th Cir. 1989). The government bears the burden of proving that the evidence meets these requirements. Thus, even if the proffered evidence satisfies the four-part test, Rule 403 precludes admission of the evidence because the probative value of such evidence is substantially outweighed by the risk of unfair prejudice.

Relevant and otherwise admissible evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time," or needless cumulative evidence. Fed. R. Evid. Rule 403. "[I]mproper grounds certainly include . . . generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). "Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair

7

prejudice or a small risk of misleading the jury. Accordingly, trial courts should exclude marginally relevant but extremely prejudicial evidence." *United States v. Curtin*, 489 F.3d 935, 963-964 (9th Cir. 2007) (citation omitted).

Even if this Court deems the interview video by the fake DOL employee, the ruse kayak video, and/or the PIP video relevant, the videos are still inadmissible under Rule 403.

Evidence detailing Ms. Durand while on a ruse kayak trip is not probative of motive. The evidence should be ruled inadmissible. Practically, this evidence will compel the bench to ignore Ms. Durand's presumption of innocence and convict her of the charges simply because she was a human being who chose to recreate–an action even with her medical issues is not only mentally and spiritually healthy, but also ***not illegal***.

Introduction of the ruse kayak video, alone, or as part of the edited PIP video poses other problems factoring into the prejudicial effect of the evidence. Namely, a person's free flow movements surreptitiously monitored outside a clinical context do not provide competent input to deliver a medical opinion. *See Thomas v. Barnhart*, 278 F.3d 947 (9th Cir. 2002) (an administrative law judge need not accept the opinion of a physician when that opinion is brief, conclusory, and unsupported by clinical findings);and *Johnson v. Shalala*, 60 F.3d 1428 (9th Cir. 1995) (same).

Moreover, the discovery in this case shows that USPS agents asked doctors about Ms. Durand's work tolerance limitations which is impermissible under 20 C.F.R. §10.506; that Ms. Durand was never shown a copy of the interview video; that the DOL did not take into consideration the post-traumatic stress she was under when making her disability assessment; that the OWCP never sought to cease payments of her benefits pursuant to FECA's procedure manual; that USPS OIG does not permit ruse vacations according to USPS OIG policies and procedures; and that Ms. Durand did not consent to the ruse kayak video which she must pursuant to the same policies and procedures.

In sum, any probative value gained by the interview video, the ruse kayak video, or the PIP video is substantially outweighed by unfair prejudice of the evidence.

To the extent this Court finds otherwise, however, regarding the interview video and the ruse kayak video individually, Ms. Durand argues that in combination, a PIP view of both (highly edited) is overly prejudicial. This is especially where medical testimony is needed to know how to interpret Ms. Durand's free flow movements on the ruse kayak video.

## IV. CONCLUSION

WHEREFORE, Ms. Durand respectfully requests this Court issue an order prohibiting the introduction, at trial, of the interview, kayak, and/or PIP video evidence and any other evidence that may fall within the 404(b) category.

RESPECTFULLY SUBMITTED July 21, 2017.

    /s/ Evangelo Arvanetes
EVANGELO ARVANETES
Assistant Federal Defender
Counsel for Defendant

## V.  CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief is in compliance with Local Rule 7.1(d)(2)(as amended). The brief's line spacing is double spaced, and is proportionately spaced, with a 14 point font size and contains less than 6,500 words. (Total number of words: 1,898 excluding tables and certificates).

DATED July 21, 2017.

>/s/ Evangelo Arvanetes
>EVANGELO ARVANETES
>Federal Defenders of Montana
>     Counsel for Defendant

## VI.   CERTIFICATE OF SERVICE
## L.R. 5.2(b)

I hereby certify that on July 21, 2017, a copy of the foregoing document was served on the following persons by the following means:

| | |
|---|---|
| __1,2__ | CM-ECF |
| _____ | Hand Delivery |
| __3__ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| _____ | E-Mail |

1. CLERK, UNITED STATES DISTRICT COURT

2. RYAN G. WELDON
   United States Attorney's Office
   Assistant United States Attorney
       Counsel for the United States of America

3. DEBORAH JOY DURAND
       Defendant


/s/ Evangelo Arvanetes