**RYAN G. WELDON**
**Assistant U.S. Attorney**
**U.S. Attorney's Office**
**P.O. Box 3447**
**Great Falls, MT  59403**
**119 First Ave. North, Suite 300**
**Great Falls, MT  59403**
**Phone:  (406) 761-7715**
**FAX:  (406) 453-9973**
**E-mail:  Ryan.Weldon@usdoj.gov**

**ATTORNEY FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CR 16-43-GF-BMM** |
| **Plaintiff,** | |
| **vs.** | **SENTENCING MEMORANDUM** |
| **DEBORAH JOY DURAND,** | |
| **Defendant.** | |

### INTRODUCTION

Deborah Joy Durand proceeded to trial and was convicted of all counts.

PSR ¶ 7.  The Presentence Investigation Report (PSR) has calculated a Criminal

History Category I and a guideline range of 30 to 37 months of imprisonment.

PSR ¶ 95.  Durand objects to the factual accuracy of paragraphs 14, 16, 22, and 24

of the Offense Conduct.  These objections do not impact the guideline calculation.

**ARGUMENT**

**Sentencing Analysis:**

Section 3553(a) of Title 18 of the United States Code contains prefatory

language —"The court shall impose a sentence sufficient, but not greater than

necessary, to comply with the purposes set forth in paragraph (2) of this

subsection."  Those purposes include the need for the sentence to:

- reflect the seriousness of the offense;

- promote respect for the law;

- provide just punishment for the offense;

- afford adequate deterrence to criminal conduct;

- protect the public from further crimes of the defendant; and,

- provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In addition, subsection (1) of § 3553(a) requires the Court to consider the

nature and circumstances of the offense and the history and characteristics of the

defendant; subsection (3) requires the Court to consider the kinds of sentences

available; subsections (4), (5), and (6) require the Court to consider the sentencing

guidelines and policy statements, and to avoid unwarranted sentencing disparity; and subsection (7) requires the Court to provide restitution to victims.

**Forfeiture:**

The United States has alleged a forfeiture of a money judgment against Durand.  This therefore requires a two-step process:  (1) the Court determines guilt or innocence of the defendant on the counts of the Indictment; and, (2) if guilty, then the Court must also decide the forfeiture issue.  *See, e.g.* Fed. R. Crim. P. 32.2(b)(1).  The parties agreed the forfeiture should be addressed at sentencing in this case.  (Doc. 94).

When proving forfeiture, courts may rely on the evidence "already in the record" or "any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable."  Fed. R. Crim. P. 32.2(b)(1)(B). The standard for forfeiture proceedings is preponderance of the evidence, not proof beyond a reasonable doubt.  *United States v. Garcia-Guizar*, 160 F.3d 511, 523 (9th Cir. 1998).

In workers' compensation cases, any defendant who commits fraud to obtain a workers' compensation benefit must forfeit "*all* benefits that [s]he obtained during the period covered by the fraud."  *United States v. Webber*, 536 F.3d 584, 602 (7th Cir. 2008) (citing 5 U.S.C. § 8148(a)); *see also United States v. Boring*, 557 F.3d 707, 714 (6th Cir. 2009) (agreeing with analysis of *Webber*); 20 C.F.R. §

10.529. Because Durand was convicted of wire fraud, she must forfeit *all* the money she received between February of 2006 and May of 2016. (Doc. 1 at 3). Forfeiture is not a discretionary act. "When the government has met the requirements for criminal forfeiture, the district court must impose criminal forfeiture, subject only to statutory and constitutional limits." *United States v. Newman*, 659 F.3d 1235, 1241 (9th Cir. 2011); *see also* 18 U.S.C. §§ 981(a)(1) and 982(a)(4) and 28 U.S.C. § 2461(c).

At trial, Agent Boynton testified that Durand received $268,892.18 in wages, $1,828.39 in travel vouchers, and $424,511.45 in medical expenses. Although Agent Boynton testified the total loss was $695,232.02, the Indictment sought forfeiture of a smaller amount—*i.e.*, $683,443.32. (Doc. 1 at 6). As a result, Durand receives the benefit of the reduction to the smaller amount that was included in the Indictment. The relevant numbers are outlined below:

| Category | Amount |
|---|---|
| Wages | $268,892.18 |
| Travel Vouchers | $1,828.39 |
| Medical Expenses | $424,511.45 |
| **Total:** | $695,232.02 |
| **Reduction Based on Indictment:** | $683,443.32 |

**Restitution:**

Restitution is different than forfeiture.  When addressing restitution, the

government may only recover what will make the "victim whole again."

> Criminal forfeiture is also separate from restitution, which serves an
> entirely different purpose.  Congress conceived of forfeiture as
> *punishment* for the commission of various [crimes].  The purpose of
> restitution, however, is not to punish the defendant, but to *make the
> victim whole again* by restoring to him or her the value of the losses
> suffered as a result of the defendant's crime.  Accordingly, we have
> held that defendants may be required to pay restitution and forfeit the
> same amounts.

*Newman*, 659 F.3d at 1241 (citations and quotations omitted).  Forfeiture and

restitution therefore are not a "double recovery."  *Id.*

The United States is not pursuing restitution for the medical expenses,

although those expenses must be included in the forfeiture.  The total amount of

restitution therefore includes $268,892.18 for the wages and $1,828.39 for the

fraudulent travel vouchers.  All total, this includes restitution in the amount of

$270,720.57.

| Category | Amount |
|:---:|:---:|
| Wages | $268,892.18 |
| Travel Vouchers | $1,828.39 |
| **Total:** | $270,720.57 |

**Sentencing Recommendation:**

The U.S. Postal Service is one of the largest contributors to the Office of Workers' Compensation Programs in the United States.  It is the duty of the agency to ensure that the process is not too onerous and that employs are accommodated throughout their time of injury.  Unfortunately, there are people who deliberately misuse and abuse the process in order to illegally gain money they are not otherwise entitle to receive.

Durand took advantage of the system.  Although she received over $270,000 she was not otherwise entitled to receive, that is only a small portion of the total loss.  The real loss is the breach of the public trust.  The U.S. Postal Service, and its employees, are entrusted by the general public to move mail throughout the country and all over the world.  Whenever a postal worker is caught defrauding the U.S. Postal Service, it causes the public to question the value of the agency and its employees.  Worse yet, it emboldens others to engage in similar tactics.  The public embarrassment, coupled with the perceived lack of trust, has catastrophic consequences.

Given the above, Durand must receive a guideline sentence of imprisonment, followed by three years of supervised release, restitution of $270,720.57, and $683,443.32 in forfeiture.  Such a sentence will ensure that Durand never engages in similar conduct and that future employees recognize the

harsh consequences of defrauding the U.S. Postal Service and the American

people.

DATED this 20th day of November, 2017.

KURT G. ALME
United States Attorney


*/s/  Ryan G. Weldon*
RYAN G. WELDON
Assistant U.S. Attorney

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule, this certifies that the body of the attached

memorandum contains 1,140 words, excluding the caption and certificate of

compliance.

KURT G. ALME
United States Attorney


*/s/  Ryan G. Weldon*
RYAN G. WELDON
Assistant U.S. Attorney