Douglas A Durand                                    November 25, 2017
1792 Glenway Ave
Fruitland, Idaho 83619

To The Honorable Brian Morris,

I'm writing to you with a testament and insight into my wife's, Debbie Durand's, physical condition and psychological condition, that perhaps, no one else has knowledge of. My hope is that it will give yo information that will help you gain an understanding of Debbie's condition. With hopes that you might reconsider your judgment against her.

I guess the best way to start this, would be from sometime in 2001 when Debbie Simmons started working for the Tomball Texas Post Office. I remember her working as a rural carrier Associate, carrying mail between many different routes, I was already an employee at the Tomball Texas Post Office. And I remember her as a hard worker, always doing what was asked of her and giving a little extra. I never heard of any complaints when she filled in for any of the carriers. It was my understanding that she did a good job for everyone she filled in for.

Later, in 2002 Debbie had to take some time to go to Alaska when her daughter had a near fatal auto accident. Debbie stayed with her until it was clear that she was going to recover, and her health was coming back. It was quite some time and I thought she had left the Post Office, but eventually she came back and started working again.

It was later in 2003 that while loading phone books in her postal jeep that she injured her back and was gone for some time. During this period I didn't really know what was going on with her, except that periodically she would come in and talk to the postmaster. I do remember her returning to work once or twice, but would go back out after a while, I thought because she couldn't do the work.

It wasn't until 2006 hat I started to get to knowing Debbie personally. She was back at work on light duty and was sitting at a desk they put next to the men's room, answering phones. I joked with her that they stuck her next to the men's room as a punishment.

It was early in 2007, after talking regularly at work, that she called work one day and asked me if I could take her home after one of her medical procedures. She didn't have anyone close that could take her home. I was happy to do it. It was a couple of days later, when I asked her if she wanted to go to dinner and she accepted. That is the point when I started to realize the extent of her injuries.

Debbie told me she was reluctant to get into a relationship because she thought her physical condition would be an obstacle in a relationship. I was undettered and we started seeing each other.

Exhibit 517

It wasn't long after that it became common knowledge at the PO that we were seeing each other. Soon after that I had one of the supervisors tell me to beware of Debbie, that she was a 'real piece of work'. I didn't know what she meant, but I just let it go. Not long after that, the acting supervisor, John Spencer, asked both Debbie and myself to report to the office. We were told that we were receiving official disciplinary discussion and that if we continued talking to each other while on duty, further disciplinary action would be taken. I personally was shocked at that, because, while we were on duty we only casually spoke to each other, as if you would speak t o any other employee there. John Spencer later told me that it was at Carolyn Bowie's direction that he was ordered to give us official disciplinary discussion. Debbie wasn't willing to accept that kind of inequality and filed an EEO. It was then that I became aware of the 'feud' between Bowie and Debbie. It really didn't surprise me much, as I viewed Carolyn Bowie as a 'tyrant'.

I was a senior mail processor, responsible for sorting machine and maintenance. She once came to me on a Monday morning, with heavy mail, after having been on vacation for two weeks, and implied that the down time from breakdowns that day were because of me, and told me that 'this wasn't happening while you were on vacation', as if I was the reason the machines were breaking. Another time she came to me and wanted me to stay two more hours into overtime, as I had many times before. I informed her that I had made a doctor's appointment for 3:15pm, which was my off time and I couldn't work overtime. She then told me that I needed to bring documentation from the doctor to state that I had an appointment. I told her that I wasn't going to bring documentation for a doctor's appointment that I had made on my personal time. The next morning she gave me a Disciplinary Letter of Warning for being AWOL. These were just a couple of instances that stand out. There were many other instances also. My point in these examples are to illustrate Bowie's handling of employees. It was as if she thrived on adversity in dealing with employees. Debbie was also affected by Bowie's strange behavior and the pressure to work outside of her restrictions. As well as pressure from the clerks to stop doing their job, after being told to so by supervisors and the threat of being disciplined was very stressful. It was then that she went out of work because of stress.

During that time she saw her primary doctor, Dr. Martin and a psychologist, Dr. Bricken, that both indicated she may be suffering from PTSD from her physical injuries. I actually attended one of Debbie's appointments with Dr. Bricken, at his suggestion. He informed me that Debbie was in sever pain all of the time, and that she wanted to be a normal person that was able to do everyday activities without pain, and would try to do normal activities even if it caused pain. He also said she had a very high tolerance to pain. At the time I really didn't quite understand what he was trying to tell me, but after years of living with Debbie, I have a much greater understanding of that assessment of her and can say that I completely agree with it.

The video of her kayaking is showing you the very best she can be. It's a couple of days of a dream come true, done with the help of drugs and determination and ... it was free! She never would have considered going on that trip had someone not told her it was completely paid for.

In the ten years that I have been personally involved with her, I have never known her to kayak, jog, bicycle, hike, etc. Or any of those things on the questionnaire that was sent to her, with the exception of riding horses. And I cans say with near certainty that in 10 years, she has ridden horses no more than 10-15 times. One of these times the horse practically killed her.

As a footnote: I once entered a Marlboro contest and told them I smoked their cigarettes, because I though it would help me to win their sweepstakes. I believe that was probably the same attitude in which Debbie was answering the kayak trip questionnaire.

I also have several questions and one is from the trial that I would like to address. One of the questions I have is; Of the 3 doctors who testified, 2 of those doctors said that Debbie could work with restriction. I can't quote the restrictions, but as I remember them being stated it seemed that they were significant and were mostly less that 4 hours daily. My question: Wouldn't that indicate that she is at least partially disabled and still eligible for some kind of compensation through Worker's Comp?

Something not brought up at the trial. Debbie receives Social Security Disability. She was approved the first time she applied for it. Only 30% of the people who apply are approved the first time. The interesting part for Debbie is that once an investigator for Social Security researched her claim, he approved her for Psychological reasons related to her injuries, not the injuries she applied for.

Debbie had filed a CA-2 many years ago with Worker's Comp for the PTSD related to her injuries and was never informed of a denial or approval. As far as the monetary claims for travel are concerned, I can testify that there are several occasions when we went to the pharmacy and either they didn't have a prescription ready or had to order the medicine for it, and then we'd have to go back to get it. Sometimes we'd show up at the doctor and they'd say they couldn't see Debbie and set up another appointment. There was even one time she was already signed into the hospital, in Great Falls, had the gown on, laying in the bed, ready for some kind of procedure and they sent her home and hold her to come back tomorrow. I don't doubt any of those claims to be true. And..I don't believe Debbie to be a LIAR!

I have another question about one of the witnesses, Dr. Hood. How is it that a doctor who has specialized in Worker's Comp cases for the last 27 years can get so deceived by a person in a 30-45 minute examination, that he makes the only 'Total Disability' determination he has ever made, and then changes his mind when he sees parts of a kayaking video from 3 days, when that person has been disabled for 4000 days. He actually stated that she probably doesn't feel anything on that medication.

When Debbie told Dr. Hood that she lives a mostly sedentary life, it's true, in my opinion and I'm sure she believes that. There are 2 or 3 days a week that she never leaves the bed, except for the bathroom. Other days she'll go get the mail, or pick some tomatoes in the garden, or other little things and sometimes big things. It always leads back to bed or the recliner, and that's were she spends most of her time.

When she says she can't go back to work, I have to agree with her. Whether it's fear of re injury or real pain, I can't imagine that she could get a job and keep it. No employer is going to put up with someone who can only work 1 hour today, and then maybe not for the next two days, maybe the next day. There is one more question in my mind. How is it that the first order of Disciplinary Action, are criminal charges? We had no idea that erroneous claims were filed, until we received a supeona that included criminal charges. Wouldn't it be more prudent for Workers Comp to send a letter, as they have numerous times in the past 13 years, stating that they needed verification in order for a given claim to be paid? That would give a person a chance to withdraw a claim if it was a mistake.

Also, if there is a question of someones truthfulness in reporting to a doctor, wouldn't it also be more prudent to a more comprehensive re-evaluation process to determine if a person is truly disabled? It is hard to believe that criminal charges being imposed is the first step.

Please consider Debbie's complete condition before sentencing, and thank you for taking the time to read my letter

Sincerely,


Douglas A Durand

To The Honorable Brian Morris

I am writing to tell you of the many fine qualities of Deborah Durand whom I have known for five years, in various capacities, including volunteering in numerous church and community events. I met Mrs. Durand while serving a church mission. Mrs. Durand was always willing to help provide meals and transportation to service projects and relief efforts.

I have had the chance to get to know Mrs. Durand and I say without a doubt that you are dealing with a person of very good moral character. Mrs. Durand operates with integrity, and never has a bad word to say about anyone. She is kind and dedicated, she is always willing to serve others less fortunate then herself.

On a personal level, may I just say that I really like Mrs. Durand and I have no doubts about her abilities to succeed in the future.

Thank you,

Matt Allen

Bank Officer for Wells Fargo

Exhibit 518

November 26, 2017

To the Honorable Brian Morris

I have been asked by Debbie Durand to tell you about my time at the Tomball Post Office.

I worked at the Tomball Post office from 2003 to 2013 and they were the worst years of working for the Postal system. I have gone through my personal journals that I wrote during that time frame. I was constantly worried about being able to do my job well enough so that Ms. Carylon Bowie and other management would not give me a hard time. I often felt as if Ms. Carylon Bowie was trying to find fault with everything I did. I know working at the Tomball Post Office was very different from my previous job of working in the Accounting Department in downtown Houston. No matter how I tried to learn what I was to do nothing seemed to be good enough. Then when I ended up working on the machines that sorted the mail, things became even worse. I ended up getting the position of Senior Possessor and was responsible for doing the maintenance on the machines. I know Ms. Carylon Bowie thought that I should not have been given the position. I believe she went out of her way to make my life miserable. I needed time each day to clean the machines and do maintenance on the machines. I was never given enough time to do what was needed. Yet was always in trouble because the machines were not working well enough. I was only given time after the 4th machine was installed and I was able to prove how much time was needed for 4 machines. But shortly after the 4th machine was put in we got the news that all the machines were to be taken out. After that Ms. Carlyon Bowie was even worse almost as if it was my fault that the machines were to be removed.

Even when the machines were taken out of the Tomball Post office I still felt like I was being harassed. Of all of the clerks that were required to know the Tomball Scheme I was the only one that was constantly being tested. I finally took the incentive to retire from the Postal Service as my only way to get away from there.

I do remember Debbie somewhat as she was there helping with the side door and the cage work and 2nd notices on the certified mail and such. I never had any cause to doubt Debbie as to her reason for being on light duty. I think I was far too busy just trying to survive working there myself.

Yours Truly

Anna M. Fuller

Exhibit 519

Leigh Grove
3182 Dunn RD
Interlaken, NY 14847
607-379-3869
leighelon@hotmail.com
November 26, 2017

Dear Honorable Brian Morris:

My father, Doug Durand, is married to Debbie Durand. I lived with them briefly in Texas on Stillwater BLVD. I am writing this letter per their request.

During this time, I observed Debbie in her day to day life. From my observations she appeared to be in pain and limited in her abilities in her daily living. She was taking daily pain medications and unable to endure strenuous tasks. If minimal tasks were completed she would need long periods of rest and would sleep several hours, which I attributed to the need of pain medications. She was also using TENS units and heat for pain management.

I feel at this time she was injured and was unable to perform her duties required to be a postal employee. It is unfortunate that they find themselves in your court presently. For the sake of our family, I urge you to show empathy in your judgement.

Sincerely,

Leigh Grove

Sent from Mail for Windows 10

Exhibit 520

## Encounters and Procedures

Clinical Encounter Summaries
**Encounter Date: 09/19/2017**
Patient

| | | | |
|---|---|---|---|
| **Name** | DURAND, DEBBIE (55yo, F) ID# 361 | **Appt. Date/Time** | 09/19/2017 09:45AM |
| **DOB** | 08/27/1962 | **Service Dept.** | MERIDIAN PAIN MANAGEMENT CLINIC |
| **Provider** | BETH ROGERS, MD | | |
| **Insurance** | Med Worker's Comp: US DEPARTMENT LABOR (DFEC) | | |

    Employer Name : USPS
    Case # : 162055745
    Case Injury Date : 04/23/2003
    Prescription: ESI1 - Member is eligible. details

### Chief Complaint

Followup: Sacroiliac disorder
Followup: Pain in left lower limb
Followup: Inflammation of sacroiliac joint
Followup: Chronic pain
Followup: Bursitis
Followup: Lumbar radiculopathy

med check
LBP

### Patient's Care Team

**Primary Care Provider:** BARRY L ACORE: 910 NW 16TH ST, FRUITLAND, ID 83619, Ph (208) 452-6851, Fax (208) 452-8053 NPI: 1154633642
**Insurance Adjuster:** TORY CHAMBERS: Ph (206) 470-3100, Fax (800) 215-4901

### Patient's Pharmacies

**SAV-ON PHARMACY #168 (ERX): 405 S. 8TH ST., PAYETTE ID 83661, Ph (208) 642-9331, Fax (208) 642-1550**

### Vitals

| | | |
|---|---|---|
| **Ht:** 5 ft 8 in 09/19/2017 09:59 am | **Wt:** 175 lbs 09/19/2017 09:59 am | **BMI:** 26.6 09/19/2017 09:59 am |
| **BP:** 99/70 sitting L wrist 09/19/2017 10:04 am | **Pulse:** 94 bpm regular 09/19/2017 10:04 am | **Pain Scale:** 6 09/19/2017 10:04 am |

### Allergies

Reviewed Allergies
**LYRICA:** Anaphylaxis

### Medications

Reviewed Medications

| | | |
|---|---|---|
| **Atarax 25 mg tablet** PRN | 09/30/15 | entered |
| **busPIRone 10 mg tablet** Take 1 tablet(s) 3 times a day by oral route. | 08/04/15 | prescribed |
| **gabapentin 600 mg tablet** 1 po q AM, 1 po q PM, 2 po qhs | 09/19/17 | prescribed |
| **Kadian 20 mg capsule,extended release** Take 1 capsule(s) twice a day by oral route for 30 days. | 09/19/17 | prescribed |
| **levothyroxine 75 mcg capsule** Take 1 capsule(s) every day by oral route. | 04/21/17 | entered |

Exhibit 521

DURAND, DEBBIE  (id #361, dob: 08/27/1962)                                    Page 2/5

**Paxil CR 25 mg tablet,extended release**                        09/19/17   entered
Take 1 tablet(s) every day by oral route.

**proGESTerone**                                                  04/21/17   entered

**topiramate 50 mg tablet**                                       06/20/17   filled
TAKE ONE TABLET BY MOUTH TWO TIMES A DAY, start 06/20/2017

## Problems

Reviewed Problems
- Chronic pain
- Pain in elbow
- Inflammation of sacroiliac joint
- Neck pain, Bilateral
- Low back pain, Bilateral
- Lumbar radiculopathy
- Sacroiliac disorder
- Bursitis
- Pain in left lower limb, Bilateral

## Family History

Reviewed Family History
| Unspecified Relation | - Diabetes mellitus |
| Unspecified Relation | - History of hypertension |

## Social History

Reviewed Social History
**Pain Management**
Smoking Status: Never smoker
Alcohol intake: None
Diet: Regular
Illicit drugs: (Notes: denies)
Occupation: disability
Exercise level: Occasional
General stress level: High
Live alone or with others?: with others (Notes: husband)
Hand Dominance: Right
Are you currently employed?: N
Work related injury?: Y
Drugs Abused: (Notes: denies)
During the past week, how much difficult have you had sleeping because of the pain in your arm, shoulder or hand?: (Notes: Sleeps: 6 hours a night.)
Employer: NA
Marital status: Married
Number of children: 3
Substance Abuse: N

## Surgical History

Reviewed Surgical History
- Injections - 05/18/2016 - L L5 TF
- Injections - 11/11/2015 - L SI JT
- Injections - 06/16/2015 - L SI Joint and Greater Trochanter Inj
- Back Surgery - 2014 - SCS replaced
- Other - 2013 - Left face rebuilt after horse accident
- Other - 2009 - TOS
- Back Surgery - 2008 - IPG implant (SCS)
- Back Surgery - 2008 - fusion
- Back Surgery - 2007 - lami
- Gastrointestinal Surgery - 1996 - gastric bypass
- Other - 1986 - tubal
- Tonsillectomy/Adenoidectomy - 1974

## GYN History

(not configured)

## Obstetric History

Obstetric History not reviewed (last reviewed 02/22/2017)

## Past Medical History

Reviewed Past Medical History
Anxiety Disorder: **Y**

DURAND, DEBBIE  (id #361, dob: 08/27/1962)                                    Page 3/5
Anxiety/Depression: **Y**
Back Problems: **Y**
Headaches: **Y**
Spine/Back Problems: **Y**
Thyroid Problems: **Y**
Notes: chronic pain.

## Screening

None recorded.

## ROS

Patient reports **dry eyes** but reports no irritation. She reports **cough** but reports no wheezing, no shortness of breath, no coughing up blood, and no sleep apnea. She reports no abdominal pain, no vomiting, normal appetite, no diarrhea, not vomiting blood, no dyspepsia, and no GERD; **constipation**. She reports **muscle aches, muscle weakness, arthralgias/joint pain, and back pain** but reports no swelling in the extremities; **left leg pain**. She reports **weakness, numbness, dizziness, and frequent or severe headaches** but reports no loss of consciousness, no seizures, and no tremor. She reports **depression, sleep disturbances, restless sleep, and anxiety** but reports feeling safe in a relationship, no alcohol abuse, no hallucinations, and no suicidal thoughts. She reports **fatigue**. She reports **easy bruising** but reports no swollen glands and no excessive bleeding. She reports **itching** but reports no runny nose, no sinus pressure, no hives, and no frequent sneezing; **seasonal allergies**. She reports no difficulty hearing and no ear pain. She reports no frequent nosebleeds and no nose problems. She reports no sore throat, no bleeding gums, no snoring, no mouth ulcers, and no teeth problems. She reports no chest pain, no arm pain on exertion, no palpitations, and no known heart murmur. She reports no incontinence, no difficulty urinating, no hematuria, and no increased frequency. She reports no abnormal mole, no jaundice, no rashes, and no laceration.

## Physical Exam

None recorded.

## Assessment / Plan

**1. Lumbar radiculopathy**
   M54.16: Radiculopathy, lumbar region
   • Kadian 20 mg capsule,extended release - Take 1 capsule(s) twice a day by oral route for 30 days.    Qty: 60 capsule(s)    Refills: 0    Pharmacy: SAV-ON PHARMACY #168    Note to Pharmacy: May Fill 10/18/17, Must last 30 days
   • Kadian 20 mg capsule,extended release - Take 1 capsule(s) twice a day by oral route for 30 days.    Qty: 60 capsule(s)    Refills: 0    Pharmacy: SAV-ON PHARMACY #168    Note to Pharmacy: may fill today, must last 30 days
   • gabapentin 600 mg tablet - 1 po q AM, 1 po q PM, 2 po qhs    Qty: 120 tablet(s)    Refills: 2    Pharmacy: SAV-ON PHARMACY #168

**2. Sacroiliac disorder**
   M25.9: Joint disorder, unspecified

**3. Pain in left lower limb** - Bilateral
   M79.605: Pain in left leg

**4. Inflammation of sacroiliac joint**
   M46.1: Sacroiliitis, not elsewhere classified

**5. Chronic pain**
   G89.29: Other chronic pain

**6. Bursitis**
   M71.9: Bursopathy, unspecified

Return to Office
None recorded.

## Encounter Sign-Off

Encounter closed by document, 09/21/2017.

Encounter performed and documented by Beth Rogers, MD
Encounter closed by document on 09/21/2017 at 2:07pm

-0107457276

162055745

DURAND, DEBBIE  (id #361, dob: 08/27/1962)
Sep. 21. 2017  2:11PM

No. 9434   P. 55

Page 4/5

9/19/17

Debbie Durand

HISTORY: Debbie is a 55-year-old woman seen in follow-up. She is here for med refill. She continues to have s/s of left L5 radiculopathy.

PHYSICAL EXAM: This is a cooperative 55-year-old woman in no acute distress. She is able to walk without the use of an assistive device.

IMAGING STUDIES: CT myelogram of the lumbar spine on 3/15/2016 demonstrated a small disc bulge at L3-L4. There is evidence of a lumbar fusion L4-S1 with mild foraminal narrowing L3-4 and L5-S1. The central canal is patent

ASSESSMENT/PLAN: 55-year-old woman status post spinal cord stimulator placement chronic L5 radiculopathy. She status post lumbar fusion L4-S1. Kadian and Gabapentin were refilled. We will see her back in 2 month's time, sooner should she have increased difficulty.

Beth S Rogers M.D.



# PT Initial Evaluation Note

NAME/CASE: DEBORAH DURAND
DATE OF BIRTH: 08/27/1962
VISIT DATE: 02/11/2015    ROOM #: TBD
REF. SOURCE: RYAN PARK NP
CASE #: 77700002   ENC #: 840310    SOC DATE:  02/11/2015
HOSPITALIZATION DATES:          TO

SURGERY DATE: NA
CERT DATES FROM/TO:
AFFECTED SIDE:
MD RETURN DATE: NA
PROVIDER #: 1467596581    PAYER:  WCOWCP300

### MEDICAL DX

| DX | DESCRIPTION | ONSET |
|---|---|---|
| 724.5 | UNSPECIFIED BACKACHE | 09/19/2014 |
| V57.1 | OTHER PHYSICAL THERAPY | |
| 724.3 | SCIATICA | |

### TREATMENT DX

| DX | DESCRIPTION |
|---|---|
| 723.1 | CERVICALGIA |
| V57.1 | OTHER PHYSICAL THERAPY |

Current Assessment Pain Levels : 02/11/2015

### Additional Subjective Comments

52 year female referred for eval and treat of low back pain, neck pain and sciatica. Pt reports long history of back pain starting in 2003 with work injury as a mail carrier. She had a laminectomy, then fusion in 2008. Pain is constant 7/10, worsening to 9/10 and very occasionally 5/10. She has a SCS which has helped with pain. In the past year her pain in her back has worsened. She had an SI injection which was helpful for about a week. Pain located in her posterior neck, low back, L buttock, running down the back of her leg to her foot. Currently limited in all ADL'S, especially lifting, bending and vacuuming. Standing at sink is very painful. Premorbid, very active, rode horses and 4 wheelers, was able to lift mail bags. Med history: low thyroid-under control with meds. Takes pain meds and has low blood pressure. Goal is to return to more activities with less pain, strengthen L leg, be able to hike without leg giving out.

### OBJECTIVE

| Description | Left | Right |
|---|---|---|
| Lumbar Extension | 50% limit, | mild pain LB |
| Lumbar Sidebend | 25% limit | 50% limit |

| Description | Left | Right |
|---|---|---|
| Iliopsoas | 4/5 painful | 5/5 |
| Quadriceps | 5 | 5 |
| Peroneals | 5 | 5 |
| LE screen | +G toe ext | WNL |
| Hamstrings | 5 | 5 |
| Ankle plantarflexion | 4 | 5 |

### Movement

Movement examination findings: Sit to Stand - increased lumbar flexion; Sit to Stand - Painful

### Posture

Posture examination findings Lumbar Spine - Decreased Lordosis, stands with R weight shift.

### Tissue Palpated

Tender Areas include : Paraspinals - L; PSIS - L

| Special Tests | Left | Right | No Side Assigned |
|---|---|---|---|
| Active Straight Leg Raising Test | + | - | |
| Dermatome L2 | intact | intact | |
| Dermatome L3 | intact | intact | |
| Dermatome L4 | intact | intact | |
| Dermatome L5 | intact | intact | |

CASE NAME: DEBORAH DURAND     PT Initial Evaluation Note                                    VISIT DATE:   02/11/2015
MLR NAMPA OP CLINIC          5251 E EXCHANGE WAY      NAMPA, ID 836875507     PH:  (208) 466-9842   Fax: (208) 466-9104  Pg: 1





## Mountain Land.
### PHYSICAL THERAPY
#### & REHABILITATION

# PT Daily Therapy Note

NAME/CASE: DEBBIE DURAND
DATE OF BIRTH: 08/27/1962
VISIT DATE:  12/01/2014    ROOM #: TBD
REF. SOURCE:  RYAN PARK NP
CASE #: 77700001   ENC #: 782483
SOC DATE:  11/18/2014   THERAPY DURATION:

SURGERY DATE:  NA
CERT DATES FROM/TO:
AFFECTED SIDE:  B
MD RETURN DATE: 12/04/2014
PROVIDER #:                    PAYER:  WCOWCP300

### MEDICAL DX

| DX | DESCRIPTION | ONSET |
|---|---|---|
| 724.3 | SCIATICA | 09/19/2014 |
| 724.5 | UNSPECIFIED BACKACHE | 09/19/2014 |
| 847.0 | NECK SPRAIN AND STRAIN | 09/19/2014 |
| V57.1 | OTHER PHYSICAL THERAPY | 11/18/2014 |

### TREATMENT DX

| DX | DESCRIPTION |
|---|---|
| 724.3 | SCIATICA |
| 724.5 | UNSPECIFIED BACKACHE |
| 847.0 | NECK SPRAIN AND STRAIN |

Current Assessment Pain Levels : 12/01/2014

### Additional Subjective Comments

Pt feels therapy has already been helping her headaches.

## OBJECTIVE

| CPT Code | Procedure Summary | Mins |
|---|---|---|
| 97035 | Ultrasound Therapy | 8 |
| 97110 | Therapeutic Exercises | 15 |
| 97140 | Manual Therapy | 30 |

| Intervention Summary | Sets/sec hold | Reps | Level | Position | Mins |
|---|---|---|---|---|---|
| Ultrasound - 1.0 mHz 1.5 w/cm2 | 1 | 1 | | | 8 |
| see flow sheet | | | | NA | 15 |
| STM/gentle mobs | | | | NA | 30 |

Intervention Time Summary  Total Timed TX   53 minutes      Total TX Time   53 minutes

## ASSESSMENT

### Assessment Components/Potential

Post Rx Pain Level: NT; Patient's tolerance to intervention: Satisfactory

### Additional Assessment Comments

Pt able to tolerate increased stretching and STM in her shoulder blades and neck. This is to increase pts ability to perform ADLs with less pain. Pt responded well to ultrasound for pain relief.

## PLAN

Plan Activities   Future plan activities include : Continue current plan

MONICA HALE, PTA        Lic #: On File has electronically authenticated and signed this document.
RYAN MYHRE, PT, DPT,    Lic #: On File has electronically authenticated and cosigned this document.
ATC.

CASE NAME:  DEBBIE DURAND        PT Daily Therapy Note
MLR NAMPA OP CLINIC        5251 E EXCHANGE WAY        NAMPA, ID 836875507    PH:  (208) 466-9642    Fax:  (208) 466-9104    Pg: 1

VISIT DATE:    12/01/2014

Case No: 162055745                    Page No: 5250                    Rec'd Date: 01/05/2015

| CPT Code | Procedure Summary | Mins |
|----------|-------------------|------|
| 97002 | Pt Re-Evaluation | 15 |
| 97110 | Therapeutic Exercises | 15 |
| 97140 | Manual Therapy | 30 |

Intervention Time Summary  Total Timed TX  45 minutes     Total TX Time  60 minutes

## ASSESSMENT

**Assessment Components/Potential**

Rehab Potential: Excellent for stated goals; Post Rx Pain Level: NT; Patient's tolerance to intervention: Satisfactory

**Reasons for Skilled Services**

97110    Maximize strength of the postural muscles/synergists to allow full recovery of injury

### Additional Assessment Comments

Debbie is making very good progress with her therapy program so far. She is improving in postural control and mobility with improving stabilization. recovery is complicated by significant myofascial restrictions and trigger points in Paraspinals, pelvic ring instability, and poor motor control, however she is making excellent progress towards goals in the past 4 weeks. Supine March test was 8 - 10mmHg initially in drop signifying very poor lumbopelvic control. She will continue to benefit from PT over the next 4-6weeks.

## PLAN

Treatment Plan  Rehabilitation plan includes : 97110 Therapeutic Exercise; 97140 Manual Therapy

Additional Plan  advance dynamic stability and improve functional activity through strengthEning, somatosensory training and body mechanics training.

ERIC VICTOR, PT            Lic #: On File has electronically authenticated and signed this document.
RYAN MYHRE, PT, DPT,       Lic #: On File has electronically authenticated and cosigned this document.
ATC.

Physician Recommendations: (Please check appropriate box below.)

[ ]  I agree with the above treatment plan.

[ ]  Please change treatment plan to include:

If Physician referred, I certify that the above described services are required, authorized and medically necessary.

_____          _____
      RYAN PARK NP                          Date

_____          _____
    Additional Provider                       Date

Report Printed on:    03/18/2015

CASE NAME:   DEBORAH DURAND          PT Progress Note                                VISIT DATE:   03/10/2015

MLR NAMPA OP CLINIC          5251 E EXCHANGE WAY          NAMPA, ID 836876607     PH:  (208) 466-9842    Fax:  (208) 466-9104    Pg: 2



162055745

## PT Progress Note

NAME/CASE: DEBORAH DURAND
DATE OF BIRTH: 08/27/1962
VISIT DATE: 05/04/2015    ROOM #: TBD
REF. SOURCE: RYAN PARK NP
CASE #: 77700002   ENC #: 892978
SOC DATE:  02/11/2015   THERAPY DURATION:      days

SURGERY DATE: NA
CERT DATES FROM/TO:
AFFECTED SIDE: L
MD RETURN DATE: NA
PROVIDER #: 1467598581   PAYER:  WCOWCP300

### MEDICAL DX

| DX | DESCRIPTION | ONSET |
|----|-------------|-------|
| 724.5 | UNSPECIFIED BACKACHE | 09/19/2014 |
| 724.3 | SCIATICA | 09/19/2014 |
| V57.1 | OTHER PHYSICAL THERAPY | 02/11/2015 |

### TREATMENT DX

| DX | DESCRIPTION |
|----|-------------|
| 723.1 | CERVICALGIA |
| V57.1 | OTHER PHYSICAL THERAPY |

**Current Assessment Pain Levels : 05/04/2015**

**Additional Subjective Comments**

Pt brings pain cream today to use with soft tissue work on her back. Most pain on the left side. Activity level has increased and overall everyday pain has come down some but she still has sharp episodes. Overall feels therapy is helping.

## OBJECTIVE

**Prior Assessment Range of Motion findings : 04/02/2015**

| Description | Left | Right |
|-------------|------|-------|
| Lumbar Sidebend | imod limit | Mild limit |

**Prior Assessment MMT Level findings : 04/02/2015**

| Description | Left | Right |
|-------------|------|-------|
| Ankle eversion | 5 | 5 |
| Ankle inversion | 5 | 5 |

**Current Assessment Level findings : 05/04/2015**

| Description | Current Level |
|-------------|---------------|
| Oswestry Disability Index | 44% |

| Intervention Summary | Sets/sec hold | Reps | Level | Position | Mins |
|----------------------|---------------|------|-------|----------|------|
| therapeutic exercise per flowsheet | 0 | 0 | | NA | 35 |
| Mnl - STM/TrP -low back in pr | 0 | 0 | | NA | 27 |

| CPT Code | Procedure Summary | Mins |
|----------|-------------------|------|
| 97110 | Therapeutic Exercises | 35 |
| 97140 | Manual Therapy | 27 |
| DOCNOTE | Documentation Only - No Charge | 15 |

Intervention Time Summary  Total Timed TX   62 minutes     Total TX Time  77 minutes

## ASSESSMENT

| Impairment/Functional Goals | |
|-----------------------------|---|
| Oswestry Disability Index | 30% |

CASE NAME:   DEBORAH DURAND          PT Progress Note                                            VISIT DATE:   05/04/2015

Go Pro 10 paddling along shoreline, "we'll study your form after this"

Go Pro 11 paddling along shoreline, "its nice and cool over here"

Go Pro 12 three canoes at shoreline, nose of boat on land, "I'm starving, It is nice over here,

I work out a lot, so sometimes I break things", pull canoes up onto land

Go Pro 13 facing sun, canoes on land at another location (no grass) carry canoes back to water

"I observed one in the Navy when they threw one overside"

Go Pro 14 on the water canoeing back, observe big boat in the water to the right

Go Pro 15 on the water canoeing back, "I'm doing this on purpose"

Go Pro 16 canoes stop on non grass beach and are pulled onto the ground

Go Pro 17 still photograph by someone riding in one of the canoes

Cathers          7/28/2015

    -Cathers

    Occulus          7/28/2015

      -Rec1_0012 nothing

      -Rec1_0014 nothing

      -Rec1_0029 nothing

01- IAR Durand Transportation Reimbursements for Boynton 03262014.pdf  6/28/2016

1 – 6  March 26, 2014     investigative analysis report from analyst Charlene Ash, CICA to Boynton in response to his lead request, systems research/query PICS for SSN, Durand's OWCP case number 162055745 had 473 service dates from April 24, 2003, to February 20, 2013, with transportation reimbursements to Durand totaling $24,286.89 (Durand was paid under the name Deborah Simmons from April 24, 2003, to February 7, 2008.)

02-OD, Durand, Vouchers with Missing Billing, 9-4-14.pdf  6/28/2016

7-50    May 12, 2014 thru May 23, 2006 medical travel refund requests (44) from Durand

03-OD, Durand, Survey Response, 12-31-14.pdf      6/28/2016

51 – 54     December 22, 2014 Durand completes snowbirds RP consumer application

2

Exhibit 522

-0013035049                                                          162055745

DOLA3700-R001A 0001277 FECA

Fiscal Agent Services        U.S. Department of Labor – FECA
PO Box 8300                  Office of Workers' Compensation Programs
London, KY 40742


February 18, 2015


MOUNTAIN LAND REHABILITATION INC
PO BOX 711185
SALT LAKE CITY    UT  84171-1185


Claimant Name:      DEBORAH       DURAND
Claimant ID:      162055745    01
Authorization Number:   802015021800595
PROVIDER NUMBER:        190506528
System Auth Number: 5049901216 5049901217 5049901218 5049901219 5049901220

The request for authorization for 02/11/15 to 04/11/15 has been reviewed
and authorized as follows:

97110    THERAPEUTIC EXERCISES                    192 Units
97113    AQUATIC THERAPY/EXERCISES                192 Units
97530    THERAPEUTIC ACTIVITIES                   192 Units
97112    NEUROMUSCULAR REEDUCATION                192 Units
97116    GAIT TRAINING THERAPY                    192 Units

The service requested is authorized for the condition(s) accepted by OWCP.
It is your responsibility to ensure you have the correct ICD9 code from the
claimant for their accepted condition when you bill for this service.  This
authorization does not guarantee payment as billed.  Billings are subject to
systematic review for propriety.  Additionally, the OWCP Fee Schedule
applies to billed amounts.

ATTENTION:  Effective October 1st, 2006, your ACS OWCP Provider Number
must be in box 33 of a HCFA or box 51 of a UB.  If the number is not
included on the form, your bill will be returned.

In the event that you wish to change the procedure authorized (i.e., date of
service, provider or procedure), please submit your change request via
facsimile to 800-215-4901 using the prior authorization template, which can
be found on our website.

For faster service, you are now able to seek, and, for routine care, receive
medical authorizations online.  Please begin using our website at
http://owcp.dol.acs-inc.com/portal/main.do to submit your authorization
requests.  If you do not have access to the website, you may continue to
submit your prior authorization requests to us via our toll free facsimile
line at 800-215-4901 using the prior authorization templates provided to you
in your welcome packet.

*[handwritten note: I received several months of active physical therapy before the kayak trip.]*

Sincerely,
ACS Prior Authorizations Department