1   Julie Pesanti DeLong (Sampson)
    Registered Professional Reporter
2   PO Box 163
    Saint Ignatius, Montana  59865
3   Phone:  (406) 498-3941
    Email:  fortherecord1103@gmail.com
4   _____

5              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MONTANA
6                    GREAT FALLS DIVISION

7   UNITED STATES OF AMERICA,        )
                                     )
8                    Plaintiff,      )
                                     )          CR-16-43-GF-BMM
9      versus                        )
                                     )
10  DEBORAH JOY DURAND,              )
                                     )
11                   Defendant.      )
    _____
12
              TRANSCRIPT OF BENCH TRIAL PROCEEDINGS
13
                           VERDICT
14

15        BEFORE THE HONORABLE BRIAN M. MORRIS
              UNITED STATES DISTRICT COURT JUDGE
16            FOR THE DISTRICT OF MONTANA

17             Charles N. Pray Courtroom
             Missouri River Federal Courthouse
18       United States District Court Great Falls
                125 Central Avenue West
19             Great Falls, MT 59404

20               August 24, 2017
                   4:00 p.m.
21

22

23

24
              Proceedings recorded by machine shorthand
25    Transcript produced by computer-assisted transcription

1 | **APPEARANCE OF COUNSEL:**

2

3 | **For the Plaintiff:**

4 | Mr. Ryan G. Weldon
Assistant United States Attorney
5 | United States Attorney's Office - Great Falls
P.O. Box 3447
6 | 119 First Avenue North, Suite 300
Great Falls, MT 59403
7 | (406) 761-7715 (Phone)
(406) 453-9973 (Fax)
8 | Email:  Ryan.Weldon@usdoj.gov

9 | Mr. Jared Cobell
Assistant United States Attorney
10 | United States Attorney's Office - Great Falls
P.O. Box 3447
11 | 119 First Avenue North, Suite 300
Great Falls, MT 59403
12 | (406) 761-7715 (Phone)
(406) 453-9973 (Fax)
13 | Email:  Jared.Cobell@usdoj.gov

14

15 | **For the Defendant:**

16 | Mr. Evangelo "Vann" Arvanetes
Assistant Federal Defender
17 | Federal Defenders of Montana
Office Headquarters, Great Falls
18 | 104 2nd Street South, Suite 301
Great Falls, MT 59401-3645
19 | (406) 727-5328 (Phone)
(406) 727-4329 (Fax)
20 | Email:  vann_arvanetes@fd.org

21 | Ms. Joslyn Hunt
Assistant Federal Defender
22 | Federal Defenders of Montana
Helena Branch Office
23 | 50 West 14th Street, Suite 1
Helena, MT 59601-3332
24 | (406) 449-8381 (Phone)
(406) 449-5651 (Fax)
25 | Email:  joslyn_hunt@fd.org

1 **PROCEEDINGS**

2

3 **(Open court)**

4 **(Defendant present)**

5 **(Proceedings began at 4:05 p.m.)**

6

7 THE BAILIFF:  The United States District Court is

8 again in session.

9 THE COURT:  Please be seated.  Madam clerk, please

10 call the next case on the Court's calendar.

11 CLERK OF COURT:  This Court will now conduct a bench

12 trial in Criminal 16-43 of the Great Falls Division, Judge

13 Morris, United States of America versus Deborah Joy Durand.

14 THE COURT:  Good afternoon, Mr. Weldon.

15 MR. WELDON:  Good afternoon, Your Honor.

16 THE COURT:  I haven't seen enough of you this week.

17 MR. WELDON:  Yes, I figured you would say that, Your

18 Honor.

19 THE COURT:  Good afternoon, Mr. Arvanetes.

20 MR. ARVANETES:  Good afternoon.

21 THE COURT:  Good afternoon, Ms. Durand.

22 THE DEFENDANT:  Good afternoon, sir.

23 THE COURT:  All right.  As I promised yesterday, I

24 have a verdict in this matter.

25 The trial began on August 21st of 2017, and ran through

1    August 23rd of 2017.  I've considered the evidence presented

2    at trial and am prepared to rule.

3         The Indictment charged Ms. Durand with four crimes:

4         Count I, making a false statement relating to Federal

5    Workers' Compensation benefits, in violation of Title 18,

6    United States Code Section 1920;

7         Count II, wire fraud, in violation of Title 18, United

8    States Code Section 1343;

9         Count III, making a false or fraudulent claim relating to

10   Federal Workers' Compensation benefits, in violation of Title

11   18, United States Code Section 287;

12        And Count IV, theft of government property, in violation

13   of Title 18, United States Code Section 641.

14        The Indictment also asserted a criminal forfeiture

15   allegation against Ms. Durand, pursuant to Title 18, United

16   States Code Section 981(a)(1), Section 9829(a)(4), and 28

17   U.S.C. Section 2461(c).

18        The government sought a personal judgment money --

19   personal money judgment, excuse me, against Ms. Durand.

20        With respect to Count I.  In order for Ms. Durand to be

21   found guilty of having made a false statement related to

22   Workers' -- Federal Worker's Compensation benefits, as charged

23   in Count I of the Indictment, the government must prove each

24   of the following elements beyond a reasonable doubt:

25        That, first, Ms. Durand knowingly and willfully made a

1    false statement or report to the Department of Labor/Offices

2    -- Office of Workers' Compensation programs;

3         Second, the false statement or report was made in

4    connection with an application for or receipt of Federal

5    Worker's Compensation benefits;

6         and, Third, her false statement or report was material.

7         For purposes of Count I, a statement or report is false

8    if it is untrue when made, and the person making it knows it

9    is untrue.

10        A defendant acts knowingly if the defendant is aware of

11   the act and does not act through ignorance, mistake, or

12   accident.

13        A defendant acts willfully if the defendant acts

14   deliberately and with knowledge that her statement was untrue.

15        A material fact is an important fact that could influence

16   a decision of the Department of Labor/Office of Workers'

17   Compensation programs, and a material fact is not some

18   unimportant or trivial fact.

19        The heart of this crime alleges an attempt to influence

20   the Office of Workers' Compensation program by willfully

21   making false statements or reports concerning a material fact.

22   The government does not have to prove that anyone was actually

23   influenced or misled.

24        With respect to Count II.  In order for Ms. Durand to

25   be found guilty of wire fraud, as charged in Count II of the

1  Indictment, the government must prove each of the following

2  elements beyond a reasonable doubt:

3      First, Ms. Durand knowingly devised a scheme or plan to

4  defraud, or a scheme or plan for obtaining money or property

5  by means of false or fraudulent pretenses, representations or

6  promises, or omitted facts.  Deceitful statements or

7  half-truths may constitute false or fraudulent

8  representations;

9      Second, the statement made or facts admitted as part of

10 the scheme were material; that is, they had a natural tendency

11 to influence or were capable of influencing a person to part

12 with money or property;

13     Third, Ms. Durand acted with the intent to defraud; that

14 is, the intent to deceive or cheat;

15     and, Fourth, Ms. Durand used or caused to be used an

16 interstate wire communication to carry out, or attempt to

17 carry out an essential part of the scheme.

18     In determining whether a scheme to defraud exists, the

19 Court may consider, not only the defendant's words and

20 statements, but, also, the circumstances in which they were

21 used as a whole.

22     To convict a defendant of wire fraud based on an omission

23 of a material fact, the Court must find that the defendant had

24 a duty to disclose the omitted fact arising out of a

25 relationship of trust.  That duty can arise either out of a

1  formal fiduciary relationship, or an informal trusting

2  relationship, which one party acts to the benefit of another

3  and induces the trusting party to relax the care and vigilance

4  in which it would ordinarily exercise.

5      A defendant caused an interstate wire communication to be

6  used when a defendant knows that some wire communication would

7  be used in the ordinary course of business, or the defendant

8  reasonably can perceive such use.

9      Count III.  In order for Ms. Durand to be found guilty of

10  making a false claim related to Workers' Compensation

11  benefits, as charged in Count III of the Indictment, the

12  government must prove each of the following elements beyond a

13  reasonable doubt:

14      First, Ms. Durand knowingly presented a false claim

15  against the United States, to an agency of the United States;

16      Second, the claim was based on a false or fraudulent

17  material fact;

18      and, Third, Ms. Durand acted intentionally and knew that

19  the claim was false and fraudulent.

20      For purposes of Count III, a claim is false or fraudulent

21  if it is untrue when presented, and the person presenting the

22  claim knows that it is untrue.  The government does not have

23  to show that the government agency was, in fact, deceived or

24  misled.

25      A misrepresentation is material if it contains a material

1   fact that it's false.  A material fact is an important fact

2   that could influence a decision of the Department of

3   Labor/Office of Workers' Compensation program.  A material

4   fact is not some unimportant or trivial fact.

5        Count IV.  In order for Ms. Durand to be found guilty of

6   theft of government property as charged in Count IV of the

7   Indictment, the government must prove each of the following

8   elements beyond a reasonable doubt:

9        First, Ms. Durand knowingly stole money with the

10  intention of depriving the owner of the use or benefit of the

11  money;

12       Second, the money belonged to the United States;

13       and, third, the value of the money was more than $1,000.

14       Burden of proof.  The government bears the burden of

15  proof of each of these elements of the charged offenses beyond

16  a reasonable doubt.

17       The government's case.  The government's evidence with

18  respect to the charges in Counts I, II, III, and IV of the

19  Indictment consisted of witness testimony and numerous

20  exhibits.

21       The government presented Kathy Simmons, Doctor David

22  Strausser, Adrienne Taylor, Traci Wallace, Doctor James Hood,

23  Sonja Drescher, Johnathan Drescher, Craig Dunn, Carolyne Bowi,

24  Special Agent Ryan Haywood, Special Agent Sara Spane, Jordan

25  Vantine, Kimberly Snyder, and Special Agent Joseph Boynton.

```
 1         Did I forget anyone, Mr. Weldon?

 2              MR. WELDON:  Not that I can think of, Your Honor.

 3              THE COURT:  All right.

 4      The defendant's case.  Mr. Durand, through her lawyers,

 5  cross-examined the government's witnesses.  Ms. Durand also

 6  presented witness testimony.

 7      Ms. Durand presented testimony from Doctor John Ellis,

 8  Jamie Gipe, Brad Harris, and Ms. Durand also testified,

 9  herself.  Ms. Durand also presented a number of exhibits.

10      Trial stipulations.  The Court also received two trial

11  stipulations; Document Number 54, and Document Number 81.  The

12  stipulation in Document 84 -- 54, excuse me, related to the

13  charge of wire fraud in Count II of the Indictment.

14      The parties stipulated that the government had proven

15  beyond a reasonable doubt that Ms. Durand had caused

16  interstate wire communications to occur "by way of wire

17  deposits, phone calls, faxes, or other electronic

18  submissions," to and from Great Falls, Montana, and to and

19  from Denver, Colorado, and elsewhere.

20      In Document 81, the parties stipulated that the record

21  did not contain any evidence that Ms. Durand had a medical

22  appointment or that Ms. Durand had picked up a medical

23  prescription on any of the dates described in Document 81.

24

25              (Discussion off the record.)
```

1

2          THE COURT:   (Viewing documents)   Count I.   With

3    respect to Count I, the government's evidence established that

4    beginning on or about February 25th, 2013, and continuing

5    until on or about July 26th, 2014, Ms. Durand, while residing

6    in Montana and elsewhere, knowingly and willfully made

7    material false statements in connection with her application

8    for and receipt of Federal Workers' Compensation benefits.

9    The amount of benefits falsely obtained by Ms. Durand exceeded

10   $1,000.

11         Ms. Durand made false statements to Doctor James Hood in

12   July 2008 regarding her physical abilities.  Ms. Durand stated

13   that she could not perform a number of physical activities

14   that she could, in fact, perform.  Ms. Durand made the false

15   statements knowingly and willfully.

16         Ms. Durand's neighbors, Sonja and Johnathon Drescher, had

17   observed Ms. Durand engage in numerous physical activities

18   between 2008 and 2010 that exceeded the physical limitations

19   reported by Ms. Durand to Doctor Hood.

20         The neighbors observed Ms. Durand jogging, riding horses,

21   lifting hay bales, clearing her property, cutting trees with a

22   chain saw, digging post holes, moving plants, mowing the yard,

23   or dragging trash cans.

24         Special Agent Ryan Haywood conducted video surveillance

25   of Ms. Durand at her home in November of 2007 through January

1    of 2008.  The video shows Ms. Durand engaging in a number of
2    physical activities around her home, such as mowing of the
3    lawn, moving trash cans, and attending to her animals.

4          The false statements made by Ms. Durand to Doctor Hood
5    were material, Doctor Hood determined that Ms. Durand was
6    totally disabled based upon Ms. Durand's false statements.

7          The Department of Labor/Office of Workers' Compensation
8    program placed Ms. Durand on the Periodic Rolls based upon her
9    alleged total disability.  The Department of Labor paid
10   Federal Workers' Compensation benefits to Ms. Durand based
11   upon her alleged total disability.

12         The Department of Labor paid Workers' Compensation
13   benefits to Ms. Durand from the time period of February 25th,
14   2013, through July 26th, 2014.  The Workers' Compensation wage
15   benefits paid out during this time period totaled
16   approximately $43,953.54.

17          Count II.  With respect to Count II, the government was
18   required to prove that Ms. Durand knowingly devised a scheme
19   or plan to obtain money by false or fraudulent means, that the
20   statements made or facts submitted were part -- as part of the
21   scheme were material, that Ms. Durand acted with the intent to
22   defraud, and that Ms. Durand used or caused to use interstate
23   wire communications to carry out, or attempt to carry out an
24   essential part of the scheme.

25         The government's evidence establish that beginning on or

1   about February of 2006, and continuing thereafter, until on or

2   about May of 2016, Ms. Durand, while residing in Montana,

3   Texas, Idaho, Utah, and elsewhere, falsely and fraudulent

4   claimed to have injuries that prohibited her from working for

5   the United States Postal Service in any capacity.

6       Her false and fraudulent claims caused Ms. Durand to

7   receive numerous benefits from the Department of Labor/Office

8   of Workers' Compensation programs, including wages, medical

9   expenses, and travel vouchers.

10      The government's evidence further established that Ms.

11  Durand used or caused to use interstate wire communication to

12  carry out an essential part of the scheme.

13      The government's evidence with respect to Count II

14  includes the evidence discussed previously with respect to

15  Count I; the government's evidence also showed that beginning

16  on or about February of 2006, and continuing through March of

17  2014, Ms. Durand had submitted numerous false travel vouchers

18  seeking payments for mileage on dates for which there was no

19  record of medical appointments, and no record of medical

20  prescriptions to be picked up.  The false travel vouchers were

21  material, as they induced the government to make travel

22  reimbursement payments to Ms. Durand.

23      The government's evidence with respect of Count II also

24  included evidence regarding an undercover kayaking trip.

25  Agents of the Office of Inspector General arranged an

1  undercover kayak trip in July of 2015 in an attempt to

2  identify whether Ms. Durand was being truthful in her claims

3  that she was unable to work for the Postal Service in any

4  capacity.

5      Ms. Durand and the undercover agents participated in a

6  three-day, two-nights sea kayaking tour in the San Juan

7  Islands in the state of Washington, beginning on July 26th,

8  2015.

9      Ms. Durand and her partner paddled a tandem sea kayak for

10 approximately six to eight hours per day.  Ms. Durand and her

11 partner paddled approximately ten to twelve miles per day.

12     The video depicts Ms. Durand using both arms to paddle

13 her kayak, carrying equipment, and setting up and taking down

14 her campsite.

15     The video shows Ms. Durand displaying full use of her

16 back, arms, and hands during the trip.  According to witness

17 testimony, one evening Ms. Durand participated on a hike after

18 paddling all day.  The hike involved some climbing.

19     The guide of the kayaking trip, Jordan Vantine, testified

20 that Ms. Durand made no complaints of pain or discomfort

21 during the trip.  Ms. Vantine testified that Ms. Durand was

22 able to get in and out of the kayak, and that Ms. Durand had

23 no problems keeping up with the other kayakers on the trip.

24 Ms. Vantine also observed Ms. Durand running at the end of the

25 trip so she could catch the ferry to leave the area.

1    Special Agent Joseph Boynton conducted video surveillance

2    of Ms. Durand while she was on the trip.  Mr. Boynton videoed

3    Ms. Durand paddling, setting up her tent, squatting, bending,

4    and lifting, and carrying kayaks with other persons on the

5    trip.

6        Ms. Vantine testified that the kayaks weighed

7    approximately 100 pounds when loaded, and 60 to 70 pounds when

8    empty.  The surveillance video also depicts Ms. Durand

9    attempting to Judo chop or Karate chop an object that another

10   person held.

11       In September of 2015, Ms. Durand completed a current

12   Capability Evaluation Form for the Department of

13   Labor/Workers' Compensation program.  In that form, Ms. Durand

14   reports physical limitations that were not observed on the

15   kayak trip, and Ms. Durand stated on the evaluation form that

16   she has chronic pain, back pain, leg pain and weakness, and

17   sciatic nerve pain.

18       Ms. Durand described her injuries during 2015 as having

19   been "getting somewhat worse."  Ms. Durand described her life

20   as "totality sedentary,"  Ms. Durand stated each day that she

21   could stand for only 30 minutes, sit for 30 minutes, walk for

22   120 minutes, kneel for 15 minutes, squat for zero minutes,

23   climb for zero minutes, bend for zero minutes, and read for

24   ten minutes.

25       The government's evidence with respect to Count II also

1  includes the stipulation in Document 54.  The parties

2  stipulated in Document 54 that the government proved beyond a

3  reasonable doubt that Ms. Durand had caused interstate wire

4  communication to occur by way of wire deposits, phone calls,

5  faxes, and other electronic submissions to and from Great

6  Falls, Montana, and to and from Denver, Colorado, and

7  elsewhere.

8       Count III.  With respect to Count III, the government's

9  required to prove three elements:

10      Number 1, that Ms. Durand knowingly submitted a false

11  claim against the United States, an agency of the United

12  States;

13      Number 2, that the claim was based on false or fraudulent

14  material facts;

15      and, 3, that Ms. Durand acted intentionally and knew the

16  claim was false and fraudulent.

17      The government's evidence established that between on or

18  about February 25th, 2013, and July 26th, 2014, that Ms.

19  Durand, while residing in Montana and elsewhere, knowingly

20  made materially false and fraudulent claims to the Department

21  of Labor/Office of Workers' Compensation program, knowing the

22  claims to be false.

23      Ms. Durand falsely claimed to be unable to work for the

24  United States Postal Service in any capacity.  The

25  government's evidence with respect to Count III included the

1  same evidence as discussed previously with respect to Count I

2  and Count II.

3       With respect to Count IV, the government was required

4  to prove three elements:

5       Number one, that Ms. Durand knowingly stole money with

6  the intention of depriving the owner of the use and benefit of

7  the money;

8       Two, that the money belonged to the United States;

9       and, three, that the value of the money was more than

10  $1,000.

11      The government's evidence established that beginning on

12  or about February 25th, 2013, and continuing until on or about

13  July 26th, 2014, Ms. Durand, while residing in Montana and

14  elsewhere, knowingly stole money belonging to the United

15  States at a value in excess of $1,000.

16      Ms. Durand received compensation for wages, medical

17  expenses, and travel vouchers from the Department of

18  Labor/Office of Workers' Compensation programs knowing that

19  she was not entitled to receive such compensation.

20      The government's evidence with respect to Count IV

21  included the same evidence discussed previously with respect

22  to Count I, Count II, and Count III.

23      Having considered all of the evidence presented in this

24  matter, the Court finds that Ms. Durand is guilty beyond a

25  reasonable doubt of having made a false statement related to

1  the Federal Workers' Compensation benefits, as charged in

2  Count I of the Indictment.

3      The Court finds Ms. Durand is guilty beyond a reasonable

4  doubt of wire fraud, as charged in Count II of the Indictment.

5      The Court finds that Ms. Durand is guilty beyond a

6  reasonable doubt of having made a false or fraudulent claim

7  relating to Federal Workers' Compensation benefits, as charged

8  in Count III of the indictment.

9      And the Court finds that Ms. Durand is guilty beyond a

10  reasonable doubt of theft of government property, as charged

11  in Count IV of the Indictment.

12      Given that Ms. Durand has been convicted of wire fraud,

13  as charged in Count II of the Indictment, Ms. Durand must

14  forfeit to the United States any property, real or personal,

15  that constitutes or was derived from proceeds traceable to

16  that offense.

17      I'm not entirely clear as to the amount of the

18  forfeiture, and what I'm going to do to clarify that is ask

19  the parties, within ten days, to present a stipulation, if

20  possible, of the amount of money subject to forfeiture.

21      If that's not possible, then to submit your own joint

22  positions regarding the forfeiture allegation, not to exceed

23  ten pages in length, within ten days of today's date.

24          MR. WELDON:  Yes, Your Honor.

25          THE COURT:  All right.  Anything else to address,

1   Mr. Weldon?

2           MR. WELDON:  No, Your Honor.

3           THE COURT:  Mr. Arvanetes?

4           MR. ARVANETES:  No, Your Honor.

5           THE COURT:  All right.  So, Ms. Durand, I'm going to

6   set the sentencing in this matter for November 30th of 2017,

7   at 1:30 p.m., at this courthouse in Great Falls.

8       Ms. Durand is not in custody, Mr. Weldon, what's the

9   government's position?

10          MR. WELDON:  Your Honor, the United States is not

11  moving for detention of Ms. Durand.

12          THE COURT:  Ms. Durand, I'm not going to require you

13  to be in custody.  I'll allow you to be released under the

14  conditions imposed by Judge Johnston when you appear before

15  him.

16          THE DEFENDANT:  (Nods head affirmatively)

17          THE COURT:  U.S. Probation will be in contact with

18  you, and Mr. Arvanetes can help with those arrangements.

19          MR. ARVANETES:  (Nods head affirmatively)

20          THE COURT:  All right.  Anything else, counsel?

21          MR. WELDON:  No, Your Honor.  Thank you for your

22  time.

23          THE COURT:  All right.  It's been a very long week

24  in trial, and I appreciate your work during the course of the

25  trial.

1          MR. ARVANETES:  Thank you, Your Honor.

2

3              **(Proceedings concluded at 4:26 p.m.)**

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

**<u>CERTIFICATE</u>**

2

3       I, Julie L. DeLong, certify that the foregoing is a

4    correct transcript from the record of proceedings in the

5    above-entitled matter to the best of my knowledge, skill, and

6    ability.

7

8
     /s/ Julie L. DeLong                    02/05/2018
9    Julie L. DeLong                        Date

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25